AF Approval                         Chief Approval

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO.  8:19-cr-540-T-30AAS

MICHAEL PRIME

### **PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, and the defendant, Michael Prime, and the attorney for the

defendant, David Weisbrod, mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One, Two,

and Three of the Information.  Count One charges the defendant with access

device fraud, specifically the production, trafficking in, control, or possession

of device-making equipment, in violation of 18 U.S.C. § 1029(a)(4).  Count

Two charges the defendant with aggravated identity theft, in violation of 18

U.S.C. § 1028A.  Count Three charges the defendant with being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Defendant's Initials _MP_

2.    Maximum Penalties

Count One carries a maximum sentence of 15 years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100. Count Two carries a mandatory term of imprisonment of two years consecutive to any term of imprisonment for Count One, a fine of up to $250,000, a term of supervised release of not more than one year, and a special assessment of $100. Count Three carries a maximum sentence of ten years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:    The defendant knowingly produced, trafficked in, had custody or control of, or possessed device-making equipment;

Second:     The defendant acted with intent to defraud; and

Third:      The defendant's conduct in some way affected interstate or foreign commerce.

The elements of Count Two are:

First:      The defendant knowingly transferred, possessed, or used another person's means of identification or identification document;

Second:     The defendant did so without lawful authority; and,

Third:      The defendant did so during and in relation to a qualifying predicate offense, in this case, access device fraud.

The elements of Count Three are:

First:      The defendant knowingly possessed a firearm or ammunition affecting interstate and foreign commerce;

Second:     before possessing the firearm or ammunition, the defendant has been convicted of a felony offense, that is a crime punishable by imprisonment for more than one year; (commonly referred to as a "felony"); and

Third:      At the time he possessed the firearm or ammunition, the Defendant knew he had been convicted of a crime punishable by imprisonment for more than one year.

4.   Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement related to the facts giving rise to this agreement.

6.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the financial institution victims in this case. The final restitution amount will be determined by the Court at the time of sentencing.

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _M P_                          4

8.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _M P_                    5

9.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a

Defendant's Initials _M P_                6

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

    10.   Use of Information - Section 1B1.8

        Pursuant to USSG §1B1.8(a), the United States agrees that no

self-incriminating information which the defendant may provide during the

course of defendant's cooperation and pursuant to this agreement shall be used

in determining the applicable sentencing guideline range, subject to the

restrictions and limitations set forth in USSG §1B1.8(b).

    11.   Cooperation - Responsibilities of Parties

        a.   The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any

other mitigating circumstances indicative of the defendant's rehabilitative

intent by assuming the fundamental civic duty of reporting crime.  However,

the defendant understands that the government can make no representation

Defendant's Initials _M P_        7

that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by

Defendant's Initials _MP_                        8

imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials  _M P_                 9

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.     <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d), 982(a)(2)(B) and 1029(c)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following firearms and ammunition which were involved or used in the offenses to which the defendant is pleading guilty:

a.   Black pistol with the following grip markings: PF940C Polymer80, INC;
b.   Eleven (11) rounds of CBC 9mm Luger.
c.   Twenty (20) rounds of CCI 22LR Subsonic Hollow Point;
d.   Fifty (50) rounds of 22 WIN Mag Subsonic Lead Hollow Point;
e.   Twenty (20) rounds of Sig 40 S&W;
f.   Two (2) rounds of BHA 9mm Luger;
g.   Eight (8) rounds of JAG 9mm Luger;

Defendant's Initials _MP_                    10

h.  Four (4) rounds of CBC 9mm contained in PMAG magazine;
i.  Black pistol with barrel marking 9x19 (no other visible markings);
j.  Tan pistol with the following grip markings: PF940C Polymer80, INC;
k.  Twenty-five (25) rounds of CBC 9mm Luger contained in 30 round Glock extended magazine;
l.  Twenty-seven (27) rounds of BHA 9mm Luger contained in ETSGROUP extended magazine;
m.  Twenty-one (21) rounds of JAG 9mm Luger contained in ETSGROUP extended magazine;
n.  Seven (7) rounds of CCI 9mm Luger;
o.  One (1) round of JAG 9mm Luger;
p.  One (1) shoulder rig holster;
q.  Fifteen (15) rounds of Gorilla 9mm Luger contained in ETSGROUP magazine;
r.  Five (5) rounds of Gorilla 9mm Luger; and
s.  Ten (10) rounds of BHA 9mm Luger.

~~Additionally, the defendant consents to the civil forfeiture of 100 Bitcoin, which the defendant acknowledges constitutes proceeds he obtained by manufacturing and selling counterfeit credit cards and counterfeit identifications on dark web sites from at least as early as 2015 through October 2018, in violation of 18 U.S.C. §§ 1028 and 1029.~~

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an

Defendant's Initials _M P_                11

excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials __MP__          12

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without

difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns

Defendant's Initials _MP_          14

until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

13.   Abandonment of Property - Firearms and Ammunition

The United States of America and defendant hereby agree that any firearm and/or ammunition as defined in 18 U.S.C. § 921, seized from defendant and currently in the custody and/or control of the Bureau of Alcohol, Tobacco and Firearms, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 924(d) and/or that the firearms and ammunition constitute evidence, contraband, or fruits of the crime to which he has pled guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the firearms and ammunition to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Bureau of Alcohol, Tobacco and Firearms, or other appropriate agency, to cause the firearms and/or ammunition described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant in this case hereby states under penalty of perjury that he is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to the following:

Defendant's Initials  M P          15

a.  Black pistol with the following grip markings: PF940C Polymer80, INC;
b.  PMAG 15 ammunition magazine;
c.  Eleven (11) rounds of CBC 9mm Luger.
d.  Twenty (20) rounds of CCI 22LR Subsonic Hollow Point;
e.  Fifty (50) rounds of 22 WIN Mag Subsonic Lead Hollow Point;
f.  Twenty (20) rounds of Sig 40 S&W;
g.  Two (2) rounds of BHA 9mm Luger;
h.  Eight (8) rounds of JAG 9mm Luger;
i.  Four (4) rounds of CBC 9mm contained in PMAG magazine;
j.  One (1) Colt 9mm Mag Loader;
k.  Black pistol with barrel marking 9x19 (no other visible markings);
l.  Tan pistol with the following grip markings: PF940C Polymer80, INC;
m.  Twenty-five (25) rounds of CBC 9mm Luger contained in 30 round Glock extended magazine;
n.  Twenty-seven (27) rounds of BHA 9mm Luger contained in ETSGROUP extended magazine;
o.  Twenty-one (21) rounds of JAG 9mm Luger contained in ETSGROUP extended magazine;
p.  Seven (7) rounds of CCI 9mm Luger;
q.  One (1) round of JAG 9mm Luger;
r.  One (1) shoulder rig holster;
s.  Fifteen (15) rounds of Gorilla 9mm Luger contained in ETSGROUP magazine;
t.  Five (5) rounds of Gorilla 9mm Luger;
u.  Ten (10) rounds of BHA 9mm Luger; and
v.  One (1) PMAG magazine.

**B.   Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $300, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release

upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

### 3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States

Defendant's Initials _M P_               19

Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _MP_                    20

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _M P_          21

9.  Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.  Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

On September 29, 2018, the Hillsborough County Sheriff's Office (HCSO) was called to the residence of Michael Prime in Tampa, Florida, based upon a report of domestic violence. Deputies found Michael Prime

standing on the roof of his residence.  Prime knowingly possessed a black

pistol with the grip markings PF940C Polymer80, INC, Made in USA

Dayoton, NV; a PMAG 15 ammunition magazine; and 11 rounds of CBC

9mm Luger ammunition.  HCSO deputies arrested Prime and charged him

with domestic battery by strangulation.  At the time of Prime's arrest, he said

his name was "Johnathan Strong" and that his date of birth was October 8,

1985.  Prime presented as his true identification a counterfeit State of

Washington driver's license issued in the name "Johnathan Strong" with

Prime's picture on it.  Later, law enforcement learned that his true name was

Michael Prime.

Continuing on September 29, 2018, HCSO deputies observed in

Prime's house stacks of credit cards, an embosser, and cartridges that metal

foil for making counterfeit credit cards.  Deputies obtained a state search

warrant for Prime's residence, and seized the following items, among others,

that moved in and affected interstate and foreign commerce:

a.      1,774 counterfeit credit/debit cards depicting

approximately 11 different issuing financial institutions;

b.      1,490 blank cards of varying color, some of which

contained magnetic stripes and/or credit/debit card chips;

Defendant's Initials  MP                24

c. 37 counterfeit driver's licenses and ID's purportedly issued by the states of Washington, Ohio, Florida, and Virginia, and the United Kingdom;

d. counterfeit social security card templates;

e. sheets of holograms used for manufacturing credit/debit card and IDs;

f. counterfeit chips for credit/debit card manufacturing;

g. multiple thumb drives and electronic media storage devices;

h. a box of paper that contained embedded blue and red fibers similar to U.S. currency paper;

i. various laptops, tablets, and computer devices;

j. a label maker;

k. multiple rolls of foil tipping paper;

l. a Supersmart Card Key machine; and

m. various printers and engravers, including a credit card printing machine and 3D printers.

One of the counterfeit credit cards recovered from Prime's residence was purported Citibank MasterCard embossed with an account number ending in -0505 and the name R.M. Investigation revealed that the account

number embossed and encoded on the counterfeit card actually belonged to

Bank of America customer J.R. of Plantation, Florida.  When interviewed,

J.R. stated that Prime did not have his/her permission to possess or use

his/her Bank of America account number.

In addition the firearm and ammunition Prime possessed on the roof,

the following firearms, ammunition, and accessories were all knowingly

possessed by Prime at the time the search:

a.   Black pistol with the following grip markings: PF940C Polymer80, INC;

b.   Eleven (11) rounds of CBC 9mm Luger.

c.   Twenty (20) rounds of CCI 22LR Subsonic Hollow Point;

d.   Fifty (50) rounds of 22 WIN Mag Subsonic Lead Hollow Point;

e.   Twenty (20) rounds of Sig 40 S&W;

f.   Two (2) rounds of BHA 9mm Luger;

g.   Eight (8) rounds of JAG 9mm Luger;

h.   Four (4) rounds of CBC 9mm contained in PMAG magazine;

i.   Black pistol with barrel marking 9x19 (no other visible markings);

j.   Tan pistol with the following grip markings: PF940C Polymer80, INC;

k.   Twenty-five (25) rounds of CBC 9mm Luger contained in 30 round Glock extended magazine;

l.   Twenty-seven (27) rounds of BHA 9mm Luger contained in ETSGROUP extended magazine;

m.   Twenty-one (21) rounds of JAG 9mm Luger contained in ETSGROUP extended magazine;

n.   Seven (7) rounds of CCI 9mm Luger;

o.   One (1) round of JAG 9mm Luger;

p.   One (1) shoulder rig holster;

q.   Fifteen (15) rounds of Gorilla 9mm Luger contained in ETSGROUP magazine;

r.   Five (5) rounds of Gorilla 9mm Luger; and

s.   Ten (10) rounds of BHA 9mm Luger; and

t.   various magazines, magazine loaders, and holsters.

Defendant's Initials _MP_          26

A search warrant was obtained for the electronic devices taken from Prime's residence, all of which were manufactured outside the State of Florida. Searching agents observed the following, among other things:

a.      246 Visa/MasterCard credit/debit account numbers; 15 Discover Card credit card account numbers; and 28 American Express credit card account numbers;

b.      images of approximately 32 drivers' licenses / ID cards driving permits from approximately 12 different issuing states, including three counterfeit State of Florida driver's licenses, a counterfeit United States Army ID card purportedly for a lieutenant colonel, five images of Canadian driver's licenses from the Provinces of Ontario and Quebec, two Portuguese citizen identification cards, and the image of a counterfeit Republic de Angola passport.

c.      five images of Social Security cards;

d.      four images of a counterfeit $100 U.S. Federal Reserve Note, serial # HF01744518C.[1]

---

[1] A search of the United States Secret Service Counterfeit Tracking Application system for the counterfeit $100 U.S. Federal Reserve Note, serial # HF01744518C revealed that between on or about September 14, 2010, through and including on or about October 2, 2018, there have been approximately 669 passes of the counterfeit $100 U.S. Federal Reserve Note bearing serial # HF01744518C in the United States totaling $66,900.

e.    messages from Prime postd to the dark web stating, among

other things, that:

- he sold "Credit Cards, IDs, and guns;"

- he sold "Ghost guns, glocks, unregistered, new, and
  untraceable," guns that were "not even ballistically
  registered;" and his guns cost $1500 because, "all
  are ghost guns, unregistered, unused, clean, no
  serial numbers, not registered with ATF ballistics.
  Untraceable;"

- he was "not a licensed gun dealer … I cannot ship
  legally, only in stealth" and "Ghost guns are illegal"

- "I must educate people, and help get them guns, so
  that when the Muslims attack, people can shoot
  them."

A search of Prime's safe found in his residence resulted in the seizure of

Prime's genuine State of Washington driver's license, Social Security card,

and birth certificate card; a counterfeit State of Washington driver's license,

issued in the name "Alec Stone" featuring Prime's photo; a counterfeit State

of Washington driver's license, in the name "Alexander Diamond" with

Prime's photo; a state of Florida birth certificate, #-096644 in the name K.M.; firearms; and ammunition (included above).

During a post-*Miranda* interview on October 2, 2018, Prime confirmed that his real name was Michael Prime, not "Johnathan Strong" or "Alex Diamond." Prime admitted that he used the aliases of "Johnathan Strong" and "Alexander Diamond" due to his prior criminal history and that he was convicted felon. Prime stated he worked for the Republic of Lampeduza for two to three years, starting in or around 2015. Investigators learned the Republic of Lampeduza was a website that facilitated the commission of credit card fraud by hosting, receiving, and selling stolen credit/debit card account information resulting from online breaches. Prime stated he was paid approximately $1,000 per month in Bitcoin as compensation for working for the Republic of Lampeduza. Prime also admitted to manufacturing and selling counterfeit credit cards and counterfeit ID's on dark web sites such as Dream Market, Wall Street Market, and Alpha Bay. Prime stated he was paid in Bitcoin for these sales.

Prime further stated he sold virtual weapons on the virtual reality website Second Life, from which Prime claimed he made approximately $300,000. Prime admitted to make two Glock 19's and one Glock 17-type

Defendant's Initials _MP_     29

pistols from parts he purchased online and admitted to purchasing ammunition.

Prime said he had approximately 3,500 Bitcoin in his possession and stated that he used Bitcoin to pay for assets, including vehicles and boats. ~~As the result of seizure warrants executed around the time of Prime's arrest, law enforcement personnel identified 100 Bitcoin in wallets under Prime's control.~~ *MP*

Before Prime possessed the firearms and ammunition described above, he was convicted of at least the following felony offenses:

1.      Theft in the Second Degree, on or about September 22, 1999, in the Superior Court of Washington for King County, case no. 99101280;

2.      Theft, Possession of Stolen Property, Forgery, and Incendiary Devices, on or about March 22, 2000, in the Superior Court of Washington for Snohomish County, case no. 991016569;

3.      Conspiracy to Commit Wire Fraud, Conspiracy to Possess Counterfeit Securities; and Possessing, Manufacturing; and Uttering Counterfeit Securities, on or about November 23, 2004, in the United States District Court for the Western District of Washington, case no. CR01-0310L-001; and

4.    Trafficking in Stolen Property, on or about December 4, 2014, in the Superior Court of Washington for Snohomish County, case no. 131024637.

Prime never had his civil rights to possess a firearm or ammunition restored and knew that he had been convicted of felony offenses and as such, was prohibited from possessing firearms and ammuniiton.

Also prior to possessing the aforementioned firearms and ammunition, the items traveled in and affected interstate and foreign commerce. In particular, the 11 rounds of CBC 9mm Luger ammunition that Prime possessed in the firearm he had on the roof was made of casings manufactured in Brazil.

In total, investigators seized approximately 5,493 access devices from Prime, including credit card account numbers, debit card account numbers, and social security numbers.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _M P_                  31

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___8ᵗʰ___ day of ___November___, 2019.

MARIA CHAPA LOPEZ
United States Attorney

Michael Prime
Defendant

Amanda L. Riedel
Assistant United States Attorney

David Weisbrod
Attorney for Defendant

Josephine W. Thomas
Assistant United States Attorney
Chief, Criminal Division